LOUTSENHIZER v. THE FARMERS' AND MERCHANTS' MILL-
ING COMPANY.

1. COMPLAINT—CAUSE OF ACTION.
The complaint herein is insufficient to show that a cause of action upon
the contract of subscription set out accrued to the plaintiff.
2. PLEADING—LEGAL CONCLUSIONS.
When the contract upon which the suit is brought is set out *in hæc
verba* in the complaint, allegations as to its legal effect are sur-
plusage.

*Appeal from the District Court of Montrose County.*

Mr. N. G. CLARK and Mr. F. D. CATLIN, for appellant.

Messrs. SHERMAN & TWITCHELL, for appellee.

THOMSON, J., delivered the opinion of the court.

The only question presented by the record in this case
relates to the sufficiency of the complaint, of which the fol-
lowing is a copy :

COMPLAINT.

" The Farmers' and Merchants' Milling Company, plain-
tiff, v. O. D. Loutsenhizer, defendant.

" Plaintiff complaining of defendant alleges :

" 1st. That plaintiff is a corporation organized and exist-
ing under the laws of the state of Colorado, and as such doing
business at Montrose, in Montrose county, Colorado.

" 2d. That in contemplation of the corporation of these
plaintiffs, and for the purpose of constructing, owning, oper-
ating, and maintaining the flouring mill then contemplated,
this defendant with others, on or about the 20th day of Octo-
ber, A. D. 1887, at Montrose, Colorado, became a subscriber
to the stock of plaintiff company by signing an agreement in
writing, of which the following is a copy :

" 'SYNOPSIS OF THE PLANS OF THE NECESSITY FLOURING
AND GRIST MILLS.

" ' The valley of the Uncompahgre has been demonstrated
to be very productive in wheat, barley and corn growing ;
that the success of the farmer, the professional man, merchant and common laborer, all depends upon the productions
of the natural resources of this valley.

" ' That in order that the local farmer may be prosperous
and induced to cultivate his farm, he must have a market
which will give him the highest price for his product. The
object of this enterprise is to give the local ranchmen all that
this enterprise can afford, at the same time charging them a
reasonable profit, to be determined by the subscribers.

" ' That this shall be a stock concern—each man receiving
full paid up stock for what he pays, and no stock to be sold
for less than dollar for dollar, and no stock to be issued except as the money is actually paid as aforesaid, and only
for such a sum as may be determined by the subscribers
hereof, as necessary to build and repair said mills and to buy
grain.

" ' That the object of this enterprise is, primarily, to furnish the local farmer with a good market for his grain.
2d. To exchange him flour and grist for his grain for what
it is really worth. 3d. To operate said mills after accommodating the local purchasers, to run said mills as a merchant
mill, and buy and manufacture flour, meal, etc., so as to make
the stock valuable as an investment. 4th. To build up the
grain-growing interest generally of the valley, which helps
all our people of every trade and profession. These details
of the plans and methods shall be arranged by the subscribers on a meeting to be hereafter called.

" ' To build The Necessity Flouring and Grist Mills at
Montrose, Colorado, we, the undersigned, for and in consideration of the efforts now being made, and to be hereafter
made to build the flouring and grist mills at Montrose, Colorado, do hereby agree to pay a committee to be hereafter
appointed by the subscribers hereof, the amount set opposite

our respective names on demand, and this obligation shall be as binding as if it were a promissory note, as the projectors of this enterprise are going to great labor and expense in the premises and incurring obligation on the faith hereof.'

" 3d. That among many others this defendant signed and executed said agreement, and subscribed and set opposite his name the sum of two hundred and fifty dollars ; which amount he thereby agreed to pay to said company, as is set forth in said agreement of subscription.

" 4th. That thereupon, and upon the basis of subscriptions and agreements of defendant and his cosubscribers as aforesaid, plaintiff company was duly formed and incorporated by this defendant and his cosubscribers, as such subscribers to said object, under the corporate name and style of The Farmers' and Merchants' Milling Company, this plaintiff, and thereupon The Necessity Flouring and Grist Mills mentioned in said subscription were constructed by defendant and his cosubscribers under the corporate name and style of The Farmers' and Merchants' Milling Company, this plaintiff, in pursuance of said subscription and at great cost and expense ; and that all the agreements and provisions of said subscription have been fully performed and carried out by said cosubscribers and the plaintiff, duly formed for such purpose as aforesaid, and plaintiff is ready and willing to issue stock to defendant as per said agreement, and said money agreed to be paid by defendant is necessary for the carrying out of the plans of said agreement.

" 5th. That defendant has not paid his said subscription or any part thereof, and that payment was duly demanded of defendant on or about January 1, 1888, and that by reason thereof there is now due plaintiff from defendant the sum of two hundred and fifty dollars, together with interest thereon from January 1, 1888, at the rate of ten per cent per annum.

" 6th. That the amount involved and for which relief is sought in this action does not exceed the sum of two thousand dollars.

" Wherefore plaintiff prays judgment for $250, together with interest thereon from January 1, 1888, at the rate of ten per cent per annum, and for costs of this suit and general relief."

The preliminary portion of the instrument sued on is in the nature of a prospectus, setting forth a project, and the advantages to be realized from its consummation.   It may be inferred from its language that a corporation was contemplated for the purpose of carrying into effect the proposed scheme, the subscribers to the instrument to determine the amount necessary for the purpose, and to arrange details of its plans and methods.   The prospectus is quite general and indefinite.   The intended corporation is not named, or the amount of its capital stated ; and it is uncertain by whom it was to be organized, or who should constitute its membership, whether the subscribers or others not mentioned.   This is followed by the contract, the enforcement of which is sought against the defendant.   This contract, as far as it goes, is complete within itself, and is not elucidated much by what precedes it.   It seems to have little connection with the introductory matter, and might be entirely detached without suffering any loss of meaning, or affecting any remedy upon it.   The measure and character of the defendant's liability, as a party to it, must be determined from the contract itself.   On its face it is not a contract with the plaintiff, or for the benefit of the plaintiff.   It is not a subscription to the capital stock of any company or an agreement for future subscription to such stock.   Its consideration is not the delivery of any stock to the subscribers, but is wholly unconnected with any scheme of incorporation.   It is an absolute and unconditional promise by its signers, to pay the several amounts subscribed by them, for the purpose of building The Necessity Flouring and Grist Mills, to a committee whom they should thereafter select.   What disposition the committee should make of the money when paid, whether the building should be done under its supervision and the money disbursed by it for the purpose, or whether it should turn the

money over to some person or persons who should have charge of the construction of the mills, the contract does not provide. The signers probably left this matter open for instructions to be given by them to the committee when it should be appointed. They promised to pay the money to the committee and not to any one else, and it is presumed that they had some object in thus reserving to themselves the control of their funds by means of a committee to be chosen by them and answerable to them. The complaint does not state whether a committee was ever selected or not. If there never was a committee no action could be maintained upon the promise for want of a payee, unless, by an arrangement subsequently made, some one else was substituted for the committee. If a committee was appointed the money was payable to it, and there could be no right of action upon the promise outside of it, unless its authority to receive the money was in some way transferred to another. It may be either that by a binding agreement among the parties, afterwards made, the committee was dispensed with, and the plaintiff substituted for it, or that a committee was appointed, and its rights transferred to the plaintiff in such way that the defendant was bound by the transfer, but nothing of the kind appears. The fatal defect in the complaint is its failure to show how any cause of action upon the contract ever accrued to the plaintiff. Apparently the necessity of some such showing was recognized, and an attempt made to supply it by alleging that the contract was a promise to pay the plaintiff, and was a subscription to the plaintiff's capital stock; but those allegations do not help matters, because upon its face it was neither. The contract speaks for itself, and it is useless to aver that it is what it is not.

The judgment will be reversed, with leave to the plaintiff to amend its complaint as it may be advised.

*Reversed.*